IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : |
| CHRISTOPHER STEIBING,     a/k/a "Amanda Fox,"     a/k/a "Cory" | :    CRIMINAL NO. 14-256  : |

**GOVERNMENT'S SENTENCING MEMORANDUM**

**I.  INTRODUCTION**

Sexualizing and humiliating both his own daughter and the daughter of an ex-girlfriend, the defendant violated the most basic precepts of a civilized society. Although he failed to have physical contact with his victim, the defendant's crime was heinous and cruel. He is a relatively young man who needs to be incarcerated long enough to ensure that he is never again in a position to victimize minors. For the reasons discussed below, the government respectfully recommends that the Court achieve this goal by imposing a term of imprisonment within the advisory guideline range of 360 months to life.

**II.  SENTENCING CALCULATIONS**

**A.  Statutory Maximum Penalties**

The maximum penalty for violating 18 U.S.C. § 2422 (coercion and enticement of a minor) is life imprisonment, with a 10 year mandatory minimum, 5 years up to a lifetime of supervised release, a $250,000 fine, mandatory restitution, and a $100 special assessment.

1

B.      **Sentencing Guidelines Calculation**

1.      Criminal History

Aside from a juvenile record and the Bucks County arrest relating to the instant offense, the defendant has accrued six prior arrests and three convictions. There is no dispute that the defendant's prior convictions, which all involved drugs or theft, amount to four criminal history points, placing him in criminal history category III. PSR ¶¶ 45-54.

2.      Total Offense Level

The United States Probation Office has correctly determined that the total offense level is 42, calculated as follows in the Presentence Investigation Report (PSR):

```
Base offense level (USSG § 2G2.1(a)):                            32
Minor aged 12 but not yet 16 (§ 2G2.1(b)(1)(B))                  +2
Offense involved sexual act or sexual conduct (§ 2G2.1(b)(2)(A)) +2
Offense involved distribution (§ 2G2.1(b)(3))                    +2
Offense involved sadistic conduct  (§ 2G2.1(b)(4))               +4
Misrepresentation of identity/use of computer (§ 2G2.1(b)(6))    +2
Acceptance of responsibility (§ 3E1.1(a)                         -2
```

PSR ¶¶ 28-43. An offense level of 42 and criminal history category of III establishes an advisory guideline range of 360 months to life.

Because the findings in the PSR accurately summarize a factual basis for each of the above calculations, the government will only substantively discuss those findings to which the defendant objects.

3.      The Defendant's Objections

a.      *Sadistic conduct*

A four level enhancement under USSG § 2G2.1(b)(4) applies because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. The defendant has objected to the application of this enhancement, but has not yet articulated his

2

specific rationale. The government will offer here a synopsis why the application is properly applied but, to the extent necessary at the sentencing hearing, will stand ready to present evidence and any additional argument addressing the defendant's objection.

While there may be factual overlap between the sexual arousal and release through sadism (which can involve "mental cruelty") and masochism (which can involve "physical abuse or humiliation"), the two are distinct concepts. United States v. Maurer, 639 F.3d 72, 78 (3d Cir. 2011) (rejecting defendant's claim that enhancement was vague and overbroad). See also United States v. Rodgers, 610 F.3d 975, 979 (7th Cir. 2010) ("§ 2G2.2(b)(4) applies to acts likely to cause physical pain as well as sexual gratification which is purposely degrading and humiliating, conduct which causes mental suffering or psychological or emotional injury in the victim") (internal citations and quotations omitted)..

Here, as noted in the Probation Officer's response to the defendant's objection, at least one image of the victim depicts her inserting a hairbrush into her vagina (at the defendant's direction). While penetration is typically considered "per se sadistic" in cases involving prepubescent children such as the minor in Maurer, see United States v. Groenendal, 557 F.3d 419, 425 (6th Cir. 2009) (citing cases), the Third Circuit took the opportunity to observe:

> We also note our belief that the application of § 2G2.2(b)(4) is not limited to circumstances where the pain that would result from the depicted conduct is the result of sexual penetration by an adult or bondage of a child. As the Fifth Circuit observed in *Lyckman*, many of the cases involving the application of this enhancement involve "pornographic images depicting bondage or the insertion of foreign objects into the body canals of a child," but such "images hardly exhaust the malevolent universe of sexual violence against children." *See* 235 F.3d at 238-39. Thus, although we interpret § 2G2.2(b)(4) as applying to a restricted universe of conduct limited by the ordinary meaning of its terms, we do not interpret this provision so narrowly as to restrict its application to a subset of sadistic and violent acts of sexual abuse.

Maurer, 639 F.3d at 80. While the defendant's victim was not prepubescent, she was a 14 year

old girl who was not yet sexually active, and the penetration was by a foreign object not designed for sexual intercourse. By itself, this imagery would justify application of the enhancement because it was likely to cause physical pain and was arguably degrading and humiliating.

But even clearer examples of degrading and humiliating conduct within the reach of 2G2.1(b)(4) are the photographs that the defendant caused the victim to take of herself at different times with the word "whore" or "slut" written across her exposed chest. The defendant not only derived sexual gratification from such images, but he clearly created them to humiliate her, not only in their creation but when he sent them to her family members. And this is to say nothing of the child pornography of the defendant's daughter, physical photographs which he asked other men to re-photograph after they ejaculated onto the pictures. The defendant's objection should be overruled.

      b.    *Timely acceptance of responsibility*

The defendant is not entitled to an additional one level reduction for timely acceptance of responsibility under USSG § 3E1.1(b). He did not timely notifying the government of his intentions in a manner that permitted the government to avoid preparing for trial. The defense objects to the government's refusal to argue otherwise to this court.

§ 3E1.1(b) itself requires "full deference to the government's assessment of the timeliness of the plea" subject only to constitutional restraints such as prohibiting the government acting based on the defendant's race, religion, or gender or for a reason not rationally related to any legitimate government end. United States v. Drennon, 516 F.3d 160, 162-163 (3d Cir. 2008). Here, the government's refusal to file a motion under this section is based solely on the defendant's lack of timeliness.

In his objections to the PSR, the defendant "denies that the decision to plead guilty was not communicated in a timely fashion as Mr. Steibing had indicated his intent to plead guilty at least as early as October 2013, when he met with the prosecutor and the agent." While the defendant did indeed express an interest in a pre-indictment plea when he was in Bucks County custody, he expressly rejected this idea after coming into federal custody and unsuccessfully challenging his detention.[1] Indeed, the government sought numerous extensions of the pre-indictment speedy trial deadline based on the defendant's comments from October 2013, and then postponed seeking a superseding indictment for the same reason. But government counsel's initial attempts at plea negotiations were rebuffed, and defense counsel eventually advised government counsel that the defendant now wanted to go to trial but might change his mind. As the trial date approached, the government repeatedly reminded the defense that if the defendant wanted to be eligible for a 3E1.1(b) reduction, he would have to communicate his new intentions before the government began its trial preparation. Finally, in anticipation of trial, following a pretrial phone conference with the Court, the government produced its Jencks and Giglio material, as requested by the defense, and began preparing witnesses and trial documents. It was not until 4:55pm on August 4, 2014 – the day before the grand jury was scheduled to consider the superseding indictment and just two weeks before the trial date – that the defendant finally communicated his intention to plead guilty. Not only did this notification occur after the government had expended resources on trial preparations, but the government (and its out-of-state witnesses) had to be ready to proceed to trial two days later if

---

[1] This meeting, and several other pre-indictment sessions, occurred because of the defendant's hope that he could cooperate in the government's investigations. The defendant's cooperation efforts proved unfruitful.

5

the defendant did not plead guilty on August 18. Accordingly, the government sought and obtained a superseding indictment charging additional conduct, but agreed to allow the defendant to plead guilty to the original indictment. The government cannot now move for a decrease under § 3E1.1(b), because it would be intellectually dishonest, not to mention unfair to those defendants who deserve such motions, to do so.

### 4. The Government's Objections

The government does not have any objections to the calculations in the presentence report, but proposes two factual corrections. First, paragraph 11 lists the date of the defendant's Bucks County arrest as May 1, 2012. The correct date was May 1, 2013. Second, the information contained in footnote 1 is attributed to admissions that the defendant made in an off-the-record proffer. Because the government agreed it would not make affirmative use of such information against the defendant, the government proposes deletion of footnote 1. Alternately, the essential facts – that the defendant's brother was not involved with the offense and did not give the defendant the child pornography – could remain in the PSR, so long as they are not attributed to admissions by the defendant.

## III. SECTION 3553(a) ANALYSIS

### A. Section 3553(a)(1) factors

#### 1. The Nature And Circumstances Of The Offense

The defendant first encountered the victim when she was 10 years old, the daughter of his then-girlfriend. Although the girl and her mother moved away, the defendant's sexual attraction for the child did not fade, and by the time she was 13 years old he had tracked

her down through the Internet.  Under any circumstances, persuading this girl to create and send him pornographic images of herself would have been abominable.

But this defendant's conduct was particularly reprehensible.  He not only manipulated the victim into sending him graphic images but he tried to groom her for eventual sexual intercourse.  Ensnaring her with her trust, he convinced the victim to create and send him degrading photos of herself which he eventually threatened to distribute if she stopped the flow of illicit images.  Worse, when the victim stopped complying with his extortionate demands, the defendant humiliated her by sending those images to her own family.  Moreover, ensuring that she would be shamed in perpetuity, he posted naked photos of the victim to a website trafficked by pedophiles, any of whom could view, download, and redistribute the images.

The defendant's conduct was predatory, calculated, and cruel.  There is no way to fathom the full psychological impact that this crime will have on the adult woman that the victim will become.  But no matter how much her wounds may heal or her memory may fade, she will live the rest of her life knowing that people may still be viewing and distributing the images of her victimization.  Accordingly, a sentence within a range of 360 months to life imprisonment would reflect the nature and circumstances of the defendant's offense.

2. <u>The History And Characteristics Of The Defendant</u>

There are no history or characteristics of this defendant which would mitigate the severity of his criminal conduct.  He has not made meaningful contributions to society or even to his own children.  To the contrary, his life seems characterized by a pursuit of pleasure, no matter how detrimental the indulgence is for his own well being or that of a child.

The defendant's claim that he was "high on crack cocaine" on each of the countless occasions he contacted the victim is belied (or at least rendered irrelevant) by the complex web of deception that he spun to perpetrate his scheme. He constructed one false identity after another, surreptitiously contacting people the victim knew in order to secretly infiltrate her circle of trust. He convinced her to photograph herself with the words "slut" and "whore" written across her body, knowing that he was tricking her into equipping him with weapons of blackmail. Any drug use attendant to the offense conduct is more easily explained by a hedonistic lifestyle than by some supposed causal link between a drug addiction and the defendant's premeditated, predatory, and repeated contacts with the victim.

Finally, while the defendant's fixation on his ex-girlfriend's child is disturbing enough, the government asks this Court to take particular note of the defendant's sexualization of his own daughter. For while he was targeting the victim in this case, he was also causing images of his daughter – taken she was 11 years old or younger – to be turned into child pornography and then asked other men to play a role in what were, presumably, his sexual fantasies about her. And the defendant did not need to have physical access to his daughter to traumatize her. He not only posted this imagery online, he shared it with a rival schoolmate of his daughter's, who, predictably, shared it with others at the girls' school. There is no aspect of the defendant's history and characteristics which is more revealing than his treatment of his own daughter.

### B. Section 3553(a)(2) factors

To the extent that the defendant seeks treatment for his substance abuse problems or any other needs, the Bureau of Prisons can address his concerns while he serves an

appropriate term of imprisonment. The remaining factors outlined in 18 U.S.C. § 3553(a)(2) all counsel in favor of a term of imprisonment between 360 months and life.

>   1. <u>Reflecting the Seriousness of the Offense and Providing Respect for the Law and Just Punishment</u>

As the applicable sentencing guidelines here reflect, there is no class of offenses more serious than those involving the coercion of minors into sexual activity. A sentence of 30 or more years would not only provide just punishment for this offender, but would also tend to promote respect for the laws specifically designed to protect the most vulnerable members of our society.

>   2. <u>Promoting Deterrence and Protecting the Public from Future Crimes</u>

Such a sentence would certainly deter pedophiles from acting on their darkest impulses, conduct which often goes undetected – as it did in the instant case before the defendant's girlfriend stumbled upon child pornography on the defendant's laptop.

It is not clear if this defendant can be specifically deterred. His past actions suggest a high risk of recidivism. Amazingly, even after law enforcement confronted him and seized incriminating evidence from his digital media, he continued his efforts to pursue the minor victim. And, unfazed by the execution of search warrants and a pending criminal investigation, he compounded his lies to police (including efforts to falsely implicate his own brother) by deleting some of the evidence linking him to his secret online identities.

A within-guideline sentence may not be able to deter the defendant, but it would at least confine him. He is a master manipulator who needs nothing more than Internet access to create new victims. He is precisely the sort of offender who needs to remain incarcerated in order to protect the public.

## C. Section 3553(a)(3-6) factors

The government recommends a sentence between 30 years and lifetime imprisonment based on careful consideration of the sentencing guidelines and the need to avoid improper sentencing disparity. While the sentencing guidelines are advisory, they remain the sole means available for assuring some measure of uniformity in sentencing, fulfilling a key Congressional goal in adopting the Sentencing Reform Act of 1984. Reference to the guidelines, while carefully considering the 3553(a) factors particularly relevant to an individual defendant, is the only available means of preventing the disfavored result of basing sentences on the luck of the draw in judicial assignments. The Third Circuit explained:

> Even under the current advisory system, district courts must "meaningfully consider" § 3553(a)(4), i.e., "the applicable category of offense . . . as set forth in the guidelines." The section of Booker that makes the Guidelines advisory explains that "the remaining system, while not the system Congress enacted, nonetheless continue[s] to move sentencing in Congress' preferred direction, *helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary.*" Booker, 543 U.S. at 264-65 (emphasis added). The Guidelines remain at the center of this effort to "avoid excessive sentencing disparities," and, as the Booker Court explained, the Sentencing Commission will continue "to promote uniformity in the sentencing process" through the Guidelines. Id. at 263. We have likewise observed that the "'Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.'" Cooper, 437 F.3d at 331 (quoting United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005)).

United States v. Ricks, 494 F.3d 394, 400 (3d Cir. 2007) (emphasis in original). Therefore, the Supreme Court has held that "district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process" in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Gall, 128 S. Ct. at 596, n.6. As the Third Circuit recently noted, sentences that fall within the guideline range are more likely to

be reasonable than those that do not. United States v. Woronowicz, 744 F.3d 848, 852 (3d Cir. 2014), citing United States v. Olfano, 503 F.3d 240, 245 (3d Cir. 2007).

In the present case, there are no policy statements of the Sentencing Commission or other 3553(a) factors in this particular case which militate against imposition of a sentence within the guideline range; to the contrary, as argued above, the 3553(a) factors consistently support the imposition of the recommended guideline punishment.

### D. Section 3553(a)(7)

The defendant should be ordered to pay an appropriate amount of restitution to his victim. As the primary, if not sole, criminal actor in her victimization, the defendant is fully responsible for the harms that she has suffered and will suffer. At the sentencing hearing in this matter, the government will submit its recommendation on this issue, which it will make based on its consultation with the victim and her family.

## IV. CONCLUSION

The defendant's conduct is beyond disturbing. He stalked a young victim in order to cause her to engage in sexual conduct. With the victim as well as his daughter, he succeeded in creating child pornography, which he posted online for other child pornographers, and then further shamed the girl by sharing the imagery with people she knew. The defendant needs to be punished, his conduct needs to be condemned, and society needs to be protected. A sentence

within the guideline range can accomplish these ends.

                Respectfully submitted,

                ZANE DAVID MEMEGER
                United States Attorney


                \_\_/s/ Joseph J. Khan_____
                JOSEPH J. KHAN
                Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by mail and/or electronic filing upon the following counsel for the defendant:

>    Mark Wilson, Esq.
>    Defender Association of Philadelphia
>    Federal Court Division
>    The Curtis Center Building
>    601 Walnut Street
>    Suite 540 West
>    Independence Square West
>    Philadelphia, PA 19106
>    Mark_Wilson@fd.org

                                           /s/ Joseph J. Khan
                                           JOSEPH J. KHAN
                                           Assistant United States Attorney

Date: December 24, 2014